May it please the Court. The District Court erred in granting summary judgment on three grounds. I'm going to begin this afternoon by discussing the ground that defendants focus most of their attention on, and that's whether Google's AdWords system receives information for selecting one of the two or more positions that a bidder wishes to maintain. The claim construction issue here is whether this information for selecting is limited to a bidder's expressed choice of a single, non-contingent position, or instead whether it may include a position and conditions. And the relevant example here would be the bidder says, I want position number one, provided that there's no competing bidder that bids a greater amount. That would be information for selecting. If we look at the claim language, it contains the phrase information for selecting, which tells us that information, which is broad, is not limited. It doesn't say that the information must be a specific position, an expressed position, or a selected position. Instead it could be, for example, a position and a condition, or as the patentee said during the prosecution history, it could be parameters for selecting a position. The defendants don't dispute that the information for selecting is found in a form where it is received from the bidder, and after the information is received from the bidder, it is used by the system. So we've got information received from the bidder, it's then used by the system for what? For selecting. So the information is then received by the bidder, the information for selecting, and it's used by the system for selecting. Let me ask you on the side. I understand there are four products accused of infringement, and I'm a little unclear, but I think that I appreciate that some of the products have a position preference feature, and some of the products do not. Is that correct? That is correct, Your Honor. And so I was a little confused because the district court suggested that you all didn't separately argue that that position preference feature rendered some claims infringement infringing. Is that right? I mean, did you not separately argue? We argued them together because on all these issues it's the same analysis, but we provided two separate analyses. For example, on this case, or for this issue, the position preference feature, if that's invoked and someone selects position number one, they say, I want position number four, then that is information for selecting one position. In addition, well, that would be the one alternative. The second alternative would be if they did not select a specific position or a range of positions, instead said, we want position number one if we can achieve it within our maximum bid, if not, position two, and so forth. So we separately argued both. They're two different alternatives. There's another issue that raises them separately. We didn't simply say it's only... With regard to the prosecution history estoppel requiring a specified position to be articulated as part of the management input data, then you still have some subset of products that would not warrant summary judgment, at least on that basis, correct? That is correct, Your Honor. That is correct. Absolutely right. But you don't argue the position preference devices separately in your blue brief as I have separate paragraphs addressing them in the infringement analysis. There's alternative one, position preference is invoked. Alternative two, it's not. But position preference with respect to the particular infringing accused system, or position preference as a matter of the claim element? Just to be clear, it's not that there's a system that... It's a feature that can be... It's an optional feature, as I understand it, on AdWords, right? Right. The AdWords system as a whole has two paths you can take. Path one, invoke position preference. Path two, do not. Right. And I just didn't see any... The red brief has a page, I think, or two that deal with the position preference option. But your blue brief doesn't address the position preference option of AdWords as I read it. I don't believe that's correct. I'll... Well, I don't want to pick up your time, but maybe before your rebuttal you can point out where you specifically call out that option and make a separate infringement argument with respect to that. Yes, I could point that out. Let me turn to Judge Moore's suggestion that there was a prosecution estoppel issue. That is their principal argument about this, Your Honor. But the prosecution history makes clear there's simply no prosecution estoppel regarding this claim of destruction. The patent team never once said the reason we're distinguishing prior art is based upon the fact that the bidder here could input a specific single position. All the features that were used to distinguish prior art were reducing a bid. For example, the prior art didn't have a system where you could automatically reduce a bid, automatically check whether a bid was too high, and then lower the bid. And just to make that point, I think it would be helpful if we looked at an example of the Joint Appendix, and I'm going to suggest we look at pages A159 and A160. And if you see in A159, it talks about interview summary on the left side. These are remarks of the patentee. And at the end of that first paragraph, it distinguishes Fisher and Davis, the prior art, saying that they fail to disclose a system or method which automatically decrements or lowers a bid if the bid is found to be higher than needed to maintain a selected position or priority. And then on the next page, you see they emphasize that. And you can see what the patentee actually emphasizes by underlining that the Davis system does not automatically check the bidder's position. Davis provides no means to automatically lower a bidder's bid. The features that were used to distinguish prior art were automatically checking if the bid was too high and then automatically lowering it. And if we look then at the claim language, which at the back of the blue brief is on page 102, column 14, we'll see that the claims have numerous steps. There are actually six steps. The issue that we're concerned with about receiving bid management data that has information for selecting, that's the very first step, step A. The steps that were dealt with during prosecution were steps B through F, particularly the last two steps, E and F. Those were the ones that were added during prosecution. That was what was used to distinguish prior art. And you'll see that in those steps, E and F, there is, quote, the selected position or priority. But counsel, the examiner interview that you referred to and the statements that you referred to weren't the end of the story here. There was subsequent prosecution. There was even a subsequent interview on A177. And I think that's probably the portion of the prosecution history that your opposing counsel would be more likely to want to direct us to. And in that, on A177, the applicant characterized the examiner statement as one in which the prior art does not teach a system or method that checks whether a bidder's bid is too high for a specific position of priority or ranking that a bidder wishes to maintain in an auction. Exactly, Your Honor. That's exactly the point that I'm making here. If you look at that, the emphasis there is does the prior art check whether it's too high for a position? It's not that it was a specific... But you added, as part of the amendments to the claims, all of this language about a specific or a selecting one of the two or more positions of priority that the first bidder wishes to maintain in the auction. That was language that was added during prosecution history. Now, the reason that you're explaining to me seems to me relatively reasonable and plausible, but Festo doesn't tell us to look behind and try to figure out what we think is the most likely reason language was added. It tells us to presume it was added to overcome prior art on its face. There's no Festo issue here. This is not an ambiguous disavowal claim scope. Well, you also argue doctrine of equivalent here. Not for this issue, Your Honor. Not for this issue? No, we do not. No, we do not, Your Honor. The sole issue here is whether there is a clear and ambiguous disavowal. As Your Honor said, our position is certainly reasonable. In fact, it is the most reasonable position. Theirs is unreasonable. If you look at the steps that were added, the steps that were added were checking for whether the first bid is higher and checking if the first bid is higher than needed to maintain. Not that there was a specific position. Well, but later in the prosecution history, if I can move on to, I think, 8203, this is the examiner's characterization of the reasons, I think, for allowability. And the examiner says Fisher checks for whether a first bid is higher than needed to maintain the selected position, right? In Fisher's case, that was the highest ranking position. But this material is regarded as patentable subject matter because in this case, you allow or you facilitate checking for any position that is selected, presumably by the bidder, right? Yes, Your Honor, but to be clear, when that checking step is happening and when the reducing and decrementing steps are happening, there is a single specific position. That's true in AdWords. The issue here is when the information... The question is who picks the position. If the bidder picks the position, then if that's what is required by the patent, then AdWords does not infringe, correct? That is not correct, Your Honor. Even under the court's claim construction, it would still infringe. Why? The information is provided by the bidder. No, no. The bidder picks position. I'm the bidder. I say I want position 4. That's one way to do it, Your Honor. No, no. Does that infringe? Yes. How? Well, because that's information for selecting one or more positions. That's one position. AdWords then will... Okay, that infringes. Now, if I can't select a position, does that infringe? If I had a device that doesn't allow me to select position 4. If you're not able to provide any information, it does not infringe. No, I provide information. I say this is my bid. Give me whatever comes out of the algorithm. If that's all it were, I don't know if that would infringe or not. That's not AdWords though. Why? AdWords is you have two options. When you sign on, you agree that you're going to get the highest position that you can achieve if you provide a maximum bid. If you don't want to go that way, instead of providing a specific position you want to achieve. But under the first formulation, you are saying, I want position 1. That's my position. I'm selecting one position, unambiguously, if there's nobody that outbids me. It's unambiguous. Now, what if somebody outbids me? Well, then I want position 2. It's true that there are conditions, but there's nothing in the claim language, in the prosecution history, in the specification, that suggests you can't have conditions. You can't say, I want position 1 under these conditions. In fact, the phrase is bid management data. It's that broad. It's true that it must include information for selecting, but it's also the case that the system itself must implement that. There's no doubt. It's an automated system. It must take that information and implement it. The question is, what is the information that's provided? Let's hear from the other side, and we'll save you rebuttal time. Mr. Verhoeven. May it please the Court. Good afternoon, Your Honors. I'd like to start by just taking a step back, if I could, and just looking at the bigger picture here. What is the innovation of the 151 patent? I'd rather, instead of you go big picture, if you don't mind, could you go right to this issue? Because this is an issue that I'm interested in. If we have some time left at the end, maybe then you could do big picture. But the issue is, what does Claim 1 and or Claim 11 require vis-à-vis this selected position? Well, both Claim 1 and Claim 11, in terms of the claim construction, I believe your question is directed to the claim construction aspect, Your Honor. And if you look at the language of the claims and the intrinsic evidence, the answer is they both require that the advertiser bidder select a particular position of priority, one position of priority out of a set of two or more. And you can look right at the claim language, Your Honor. So you would say that if I was able to say I am willing to pay $0.50 for position 1, but only $0.25 for position 2, and $0.05 for any position 3 through 12, that would meet this claim limitation, if the software allowed someone to express those sorts of preferences? I would say that what the claim limitation requires is that in addition to a monetary bid, which was in the prior art, like GoTo.com, you also, the innovation here, is you also submit, you bid for a position. You select a specific position, and that's the whole point of the innovation, is instead of just, here's my bid, hope I win, you say, here's my maximum bid, but here is where I want to be, 2, 3, 4, whatever the bid is. And so if the software allows for that, then it infringes this limitation, in your view? If the software were to allow for the bidder to specify a specific position, yes, that particular element would be met as long as all the other elements are met. I understand. We're just talking about that element. And do you acknowledge that there are some versions of AdWords that are accused of infringement in this litigation which have a position preference feature? Position preference, I acknowledge, is a feature you can turn on. Position preference, however, the answer is yes. I thought there were some versions that were sold that don't have that feature even available. Is that wrong? Look, there are four versions accused of infringement. I'm having trouble keeping track. I don't dispute that a small number of people use the position preference feature in connection with AdWords. I have a couple of points that are really important to make since there hasn't been a lot of briefing on this. One is the position preference feature is a feature that never, ever compares a bidder's amount to another bidder's amount. The position preference feature looks at a bidder A's bid over time without comparing it to any other bids and then over time, say a day or so, figures out whether you can maintain a position by lowering it or increasing it a little bit. It's not even part of the auction really. It's sort of a side feature. And so that's one of the reasons you don't see a lot of briefing here because it's undisputed that position preference, the way it works, that's not the auction. The auction is a different process. But the important point, I think, a takeaway point here that's dispositive for your analysis, Your Honor, is that it's undisputed that when someone's using position preference, that feature never checks your bid, you're the one who turned it on, bidder A's bid, against any other bids and compares them. Wait, but are you just linking that with your quality control argument or that algorithm? Are you saying the reason it never compares bids is it's not comparing simply the pure bids? It's comparing at the, I forgot what you call it. Quality score. Quality score. No, it's a different reason. It's a side feature. So you still have the option, still run the same way, whether position preference is on or not, and that's why the appellant has argued the auction feature because the position preference is a side feature that you can use, but the actual auction is the one that involves the quality score. So the position preference over here is not using the quality score until you plug in a bid amount into an actual real auction. And so they are different. I guess I'm not following the difference. Can you try it again? I'm not following how it's distinction. So you have an auction. The way AdWords works is you have an auction. The bidder submits a maximum bid, which is typically maximum cost per click, advertising text, and then perhaps keywords that they wish to have associated with the ad. The bidder does not submit, as part of the auction process, any selection of a position of priority. You never say, as part of the auction, I would like to be position two. Never. Whether position preference is on or position preference is off. So it's divorced from the bidding. I'm sorry? It's divorced from the bidding. Exactly. It's a side thing that you can use to try to improve your bidding number that you put in the actual auction, but it's not part of the auction, and it's undisputed that it's not part of the auction. And so the actual auction, it takes maximum CPC and applies a complex machine learning algorithm, which we refer to as the quality score, and that goes to the other issue, Judge Moore, but that actually is not part of position preference. Position preference is before the auction or it's outside of the auction, and if someone's using position preference, that may change the bid they submit, their max CPC amount, but they never submit in the auction a selection of a position of priority in the actual auction. It never happens. Well, then what is the position preference feature? Is it simply maintaining a ranking that they achieved rather than articulating a specific thing they want? It's historical data. It's historical data. So I say this is purely hypothetical, but say I'll pay between 3 and 5 or I want to be in positions 3 to 5. Let's say you want to be in positions 3 to 5. It looks at your bids and sees where historically you've ended up in the live auctions, and then it can provide information that allows you to change your actual bid amount to get closer to a 2 or a 3 or a 4, but the actual auction, even with position preference on, is simply the maximum CPC that gets submitted, and then a complex algorithm we call quality score. It looks at your ad text. It looks at your keywords. It looks at the ad itself. It looks at user location, all kinds of different things to assign an ad. Am I right that the district court did not decide summary judgment of non-infringement with regard to the position preference feature use? So when the position preference feature is being utilized, the district court reached summary judgment on all of the alternative grounds he or she, I don't remember, articulated, but did not find summary judgment of non-infringement when that feature is being used on that basis. He didn't say there's no infringement of the position preference requirement even when the position preference feature is being used, did he? I'd have to reread it to be absolutely precise, Your Honor. Just one second. It says the court said that while the position preference feature allows a bidder to enter a range of preferred positions, it is ad words, the auction, that still determines the advertisement's position based on ad rank. And so, again, the distinction is that ---- No, but did he find summary judgment of non-infringement for failing to satisfy that feature? I don't think that the opinion directly says that one way or the other, Your Honor. So that's not something that's in front of us then? That's correct, Your Honor. Right. So it's not in front of us whether or not, so unfortunately I've wasted a bit of your time here, but it's not in front of us whether or not summary judgment of non-infringement was warranted on the basis of the features when it's employing position preference. I would agree that only if you're talking about that one element. Yes, I understand. Because there's other elements in here about comparing the bidder A against bidder B and then checking that against the position of priority that is selected by the bidder and then you increase it or decrease it in order to maintain the position of priority within the auction. And the court found no version of ad words does that, Your Honor. So is it enough if the software allows the bidder to say, I want the highest position I can get, I'm bidding 50 cents a click. If 50 cents a click garners me position one, I'm okay with that. If it garners me position two, I'm okay with that. Give me the highest position I can get. That's goto.com, Your Honor. But that is what the trial court seems to have said by way of claim construction, isn't it? I don't believe so. Well, he says, and I'm reading from A12, talking about the bidding position has to be a specific bidding position. But there is nothing in the claim language or specification that indicates the bidder must choose a specific position. The bidder may choose the highest bidding position possible. That's Judge Moore's question. That's what the trial judge has said, right? That's the language of the opinion. Absolutely. I interpret that to mean, if you read the opinion, it's whole. You can see that the court very clearly and expressly said that the selected position of priority is a specific position. Right. But that's the odd thing. He says it has to be specific, but it doesn't have to be express, which I find a dichotomy that's a little hard to get my hands on. But the judge seemed to have it pretty clearly in mind that highest position available is specific, albeit not express. I would interpret it slightly different, and I agree that I had a little trouble reading that in the context of everything else in the opinion as well. But I think what the judge was addressing was the golf tee time example. Well, but he didn't limit himself. That was the example that led him into this discussion. The discussion is plainly a discussion of claim language, right? The problem, in essence, is what you're staking, at least on this element, you're staking your case on the fact that you can't go in AdWord and say, I want third place. But any time somebody submits a request, it is presumably, it's the nature of an auction, you're asking for the highest that I can get for my money, right? Isn't that inherent in the auction? But that, in my view, Your Honor, that's you've just shown too much. That's go-to, you said. I understand that, but the question is, let me put it this way. Are you asking us to walk away from this part of the district court's opinion? Well, I'm not sure I'd ask you to walk away from it. Well, I disagree with you. I'm asking you to interpret it the following way, because I think we want to try to bring harmony to the order. And the order very clearly says that it is a specific position that's selected by the bidder all over the place in the order, in a couple of places, I should say. So I would interpret that language as referring to the golf tee example, and it's talking about how you select, Judge Bryson. So not that you do select specific, but how do you do it? Do you have to do it a specific way? Do you have to say 9 a.m., or can you simply say, I want the premium time? And so I think that's how I would interpret it. This was briefed before the court, Your Honor, on summary judgment, and this argument that you're considering was made, and the court still carried on with its construction and found that there was a specific, that the claims required that the bidder select a specific position, and then found that in the AdWords there was no ability for a bidder to select a specific position. All they could do was maximum CPC keywords in AdRec. So that's how I would interpret it, Your Honor. Do I think that that portion of the opinion is vital to the important analysis of the claims? I would say no. I would say that the court's reasoning in the order about the selected position of priority is clear. It's concise. If you look at the prosecution history, as Judge Moore went through and Judge Bryson, you went through, there really is no question that because of prior art, the patentee was required to claim basically what he said his invention was, which is the ability for a bidder to say, I want a specific position, one of two or more positions of priority. It went all the way down to saying, not just selected, you have to select one of two or more positions of priority. So it's clear that if you look at the intrinsic evidence in the prosecution history, that what the patentee narrowed its invention to was a bidder specifically saying position one, specifically saying position two. But as I understood Mr. DeVos say, certainly if we could agree that either the express request or the effective request was for position three or position one, specifically position one, let's say, then that would infringe as he views it. And I understand that, at least on this element, you don't disagree with that. I don't disagree that you... I put the question very clearly. Okay. What I'm trying to ask is, if AdWords were amenable to a request for top position, then with respect to that request, this limitation would be infringed, correct? No, only because... Okay, that's what I want to hear. Only because there's no other options, okay? AdWords... Well, there's lots of other options, but if you say one of two or more, one of two or more is first, right? I mean, that's one of the ones you can pick. To say that a system has no ability to select anything except the highest, which is essentially what they're saying, is essentially what GoTo is, takes away the whole meaning of selecting, because you don't have an opportunity to select. Would you like number one or number one, you know? That's not a selection, and so... Well, you can say, I'll pick either number one or I don't want anything, or I'll pick whatever you've got. That's two choices, at least. Well, I don't see where there's any option for that to be filled in in the AdWords system. I would have thought your answer would have been not if the system's doing the selecting rather than the bidder. Because the system is the one selecting in Judge Bryson's hypothetical, isn't it? Because the system is going to rank you and determine where you fall, so it's not really the bidder doing the selecting. That's a very good point, and I wish I'd thought of it. But that's absolutely another reason. My hypothetical is saying, if AdWords did allow you to do that, then it would be the bidder who would be saying, I don't want to play unless I can be first, right? That's my hypothetical. The bidder says, I'll only play if I can be number one. Hypotheticals are dangerous, but the quick answer is AdWords doesn't do that. It doesn't give you the option. You submit your max EPC, and you don't submit any information about where you want to be. And to say that, well, even though you haven't chosen anything, you've resulted in a position because of other information you've submitted the system is selecting, and that meets the claim language. As the district court said, that nullifies the innovation here. And it's directly contrary with prosecution history, and I see my time is up. So unless there's further questions, I'll thank you very much. Any more questions? Thank you, Mr. Verhoeven. Thank you, Your Honor. Mr. Bilbray. First, Your Honor, Judge Bryson, page 41 of the blue brief is where we address position preference on that issue. I want to focus my time with Judge Moore on this question of the prosecution history. It is very important that we agree on the following. The patentee never used the phrase specific position with respect to the information received from the bidder, from the bid management data. Specific position is the phrase that Your Honor has called out in the prosecution history. That phrase, specific position, was never used with respect to step A, this information received from the bidder, the bid management data. That's fundamental to understand. And to make that clear, if we look at the claims, again, the blue brief, page A-102, column 14, step A is this receiving bid management information. Whenever the patentee talked about a specific position, it was with respect to the checking and incrementing and reducing steps, that's steps B through F as we've labeled them. Which page are you on? A-102, column 14 of the patent. Oh, you're just in the patent. Yes, just in the patent. All right. So we looked in the patent. Well, you said that's step A through whatever as you labeled them, but the patent doesn't have labels. It does not. So I thought maybe you were on a specific page in your brief or something with labels. No, I'm sorry, Your Honor. If we look at that first step receiving bid management data, that's the one where this claim term information for receiving or information for selecting appears. The patentee never used the phrase specific position with respect to that information that's received, or bid management data. You won't find that anywhere in the prosecution history. Instead, Your Honor, what the defendants point to are phrases where the patentee is talking about checking to see whether the bid is higher than needed to maintain a specific position. That's way down here, the next to the last step, or with respect to the very last step. Well, suppose that I read the prosecution history as requiring the bidder to select one or more positions of priority. Does AdWords do that? Absolutely, Your Honor. How? The bidder has two choices. Path one is you can say, I want position number four, or I want just position number one. I don't want anything else. That's the answer to Judge Bryson's question. You can do that. I didn't think AdWords allowed you. Oh, you're saying if they elect the position preference feature. Right. You can say, listen, I want position one. That's all I want. Okay. Aren't there versions that are being accused of infringement that don't utilize the position preference feature? It's all the same version. The question is whether a user wants to go that way or a different path. I'm sorry. I thought AdSense, and I may be wrong, but I thought AdSense doesn't have a position preference feature. Am I misremembering the facts? Because there are four different products accused of infringement. I realize they're all related. But I thought the AdSense product didn't have position preference. I don't recall the answer to that one. I just don't. Okay. But let's take the second path, which is. . . AOL doesn't have. . . AOL's product doesn't have position preference. It is essentially the same as the AdWords one, yes. It's a white-label version of it. But it's a white-label version without the position preference feature. I don't recall that. I don't believe so. I think the evidence is just the opposite. Say that I remember that it doesn't. And just. . . So. . . Okay. So how. . . If it doesn't have a position preference feature, how would it infringe that claim language of selecting one of the two or more positions of priority? Because the bidder states, when he signs up, that I agree that I'm going to be seeking the highest position that I can get, consistent with a maximum CPC, a maximum CPC bid, if I provide that. So the bidder then provides that maximum bid. That's the bid management data. Well, selecting the highest, how is that selecting one of two or more? Well, there's certainly one through ten positions. But you're not selecting number two or three. You're saying I want the highest. Well, you're saying I want number one, if I can get that, unless somebody outbids me. What you're saying is that you are selecting whatever the system spits out as what you can get for your money. I would not phrase it that way. I know you wouldn't. Because that's not helpful to your case. It's not true either. No, it's not true. All right. You are saying I want position number one. You're not saying I'm willing to take number five if I could have gotten number one. No, of course. You say give me the highest you can give me. If you can give me one, terrific. Otherwise, if my money will only buy me five, fine, I'll take that. You're saying I want position number one unless someone outbids me. It's a specific max CPC. If someone's going to outbid that, if the conditions are such that no one's outbidding me, I want position one. But it's unambiguous under that condition, I want position one. It's also unambiguous when I want position two. It's also unambiguous when I want position three. So you're saying it performs all of the checking steps. Yes. Those steps, absolutely, Your Honor. Those steps we presented evidence to deal with the checking, raising, lowering steps. It does all of those steps. They don't move for summary judgment on those steps. But am I not correct that if you wanted position four, set aside position preference. Yes. You could not go to AdWord and say, give me position four. If you wanted position four and you're not using position preference, then you don't want position four. You're not saying that's what I want. Let's say, hypothetically, I do want position four and I'm using AdWord without position preference. Can I use AdWord to request and obtain position four? If you're not using position preference, the answer is no, you can't do that. You can't do that. But that's not part of the patent. The patent is what information is received on the system side. Does the system receive information that it can use to select one position that the bidder wishes to maintain? We know a position the bidder wishes to maintain. They tell us when they say unambiguously, I want position one. If I can get that, if not, position two and so forth. I know I'm over my rebuttal time. I appreciate your time. Thank you. Thank you, Mr. Durrell. Mr. Verhoeven, case is taken under submission.